UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X     Civil Action No.  25-6714
CIARA RENEE,

       Plaintiff,

v.                               <u>COMPLAINT</u>

SISTERS CLARKE LIMITED
LIABILITY COMPANY, MAKE WAY
BROADWAY LIMITED LIABILITY
COMPANY, NATIONAL ARTISTS
MANAGEMENT COMPANY, INC.,
ALECIA PARKER, P3 PRODUCTIONS
a/k/a P THREE PRODUCTIONS and
SAMUEL LOPEZ,

       Defendants.

------------------------------X

      Plaintiff, CIARA RENEE (hereinafter "Plaintiff'), by and through her attorney, files this Complaint against defendants and states as follows:

             <u>PARTIES</u>

     1.   Plaintiff is an individual domiciled in California.

     2.   Upon information and belief, at all times material hereto, SISTERS CLARKE LIMITED LIABILITY COMPANY ("SISTERS CLARKE") is a New York limited liability company authorized to do business in the State of New York and maintains its principal place of business in New York, New York.

     3.   Upon information and belief, at all times material hereto, MAKE WAY BROADWAY LIMITED LIABILITY COMPANY is a New York limited liability company authorized to do business in the State

of New York and maintains its principal place of business in New York, New York.

4.     Upon information and belief, at all times material hereto, NATIONAL ARTISTS MANAGEMENT COMPANY, INC. ("NAMCO") is a New Jersey corporation authorized to do business in the State of New York and maintains its principal place of business in New York, New York.

5.     Upon information and belief, at all times material hereto, defendant P3 Productions a/k/a P Three Productions ("P3 Productions") is a general partnership that maintains its principal place of business in New York, New York.

6.     Upon information and belief, ALECIA PARKER and SAMUEL LOPEZ are individuals domiciled in New York State.

7.     Upon information and belief, defendant ALECIA PARKER was and is was the agent, employee, partner, joint-venturer, co-conspirator, owner, principal, shareholder, member, officer, director and/or employer of defendant NAMCO, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other.

8.     Upon information and belief, defendant SAMUEL LOPEZ was and is was the agent, employee, partner, joint-venturer, co-

conspirator, owner, principal, shareholder, member, officer, director and/or employer of defendant P3 Productions, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other.

JURIDICTION AND VENUE

9.    Personal jurisdiction over the Defendants is based upon 28 U.S.C. § 1332(a)(1) because plaintiff is domiciled in California, and the Defendants are all citizens of the State of New York or New Jersey, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interests.

10.    Venue is proper in the Southern District of New York pursuant to 28 US.C. §1391(b)(2) being that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

SUBSTANTIVE ALLEGATIONS

11.    Upon information and belief, at all relevant times, defendant SISTERS CLARKE LIMITED LIABILITY COMPANY was and is a licensee of the copyrighted theatrical work entitled "Gun & Powder" with Copyright Registration No. Pau003922750 and is

3

permitted to produce the copyrighted work as a live musical production.

12.  On or about November 21, 2023, SISTERS CLARKE and plaintiff entered into a written letter agreement (the "Agreement") whereby plaintiff agreed to provide her acting and singing services in the role of "Mary Clarke", a leading character in the copyrighted work that is a full length musical entitled "Gun & Powder" (the "Play") to be performed at the Paper Mill Playhouse in Millburn, New Jersey for a limited run in April, 2024 and May, 2024 in return for (i) certain monetary compensation and (ii) the right to continue such services in a production of the Play mounted by SISTERS CLARKE in New York City or London upon completion of good faith negotiations to determine plaintiff's monetary compensation for such services.

13.  The obligation of SISTERS CLARKE to negotiate in good faith with plaintiff regarding her employment in a production of the Play in New York City or London constitutes valid and material consideration in the Agreement. But for the obligation by SISTERS CLARKE to conduct such negotiation in the Agreement, plaintiff would not have entered into the Agreement.

14.  From approximately February, 2024 to May, 2024, plaintiff properly performed all the services required of her pursuant to the Agreement during the entire term of the Agreement including the full run of the Play at the Paper Mill

4

Playhouse.  Plaintiff fulfilled all her obligations under the
Agreement without any uncured breach or default thereof.  At no
time from the commencement of the Agreement until the completion
of plaintiff's obligations under the Agreement did SISTERS
CLARKE ever notify plaintiff that she was in breach of or was in
default of any of her obligations under the Agreement.

15.  In a positive review by The New York Times dated April
18, 2024 of the Play performed at the Paper Mill Playhouse and
designated as a "Critic's Pick" by the newspaper, plaintiff was
singled out for her contribution to the show:  "The ensuing
conflicts, both within and between them, are rendered in belt-
heavy R&B numbers that LaFontaine, and especially [plaintiff
Ciara] Renée, send soaring."

16.  The New York Times's "Critic's Pick" designation and
logo applicable to its review is displayed prominently on the
defendant's website relating to the Play
(www.wantedmusical.com).

17.  A review co-written by two critics in the The Jewish
Voice and Opinion dated April 17, 2024 stated: "We were
absolutely captivated by [plaintiff] Ciara Renée and Liisi
LaFontaine's flawless performances, with their delightful voices
and great stage presence. They were spectacular, supported by a
wonderful, accomplished cast, each a star in their own right."

18.   Another positive review of the Play dated April 17, 2024 stated: "The cast of Gun & Powder is a perfect collective. The company features prominent stars of stage and screen that include Liisi LaFontaine as Martha Clarke; [plaintiff] Ciara Renée as Mary Clarke; Jeannette Bayardelle as Tallulah Clarke; Aaron James McKenzie as Elijah; Hunter Parrish as Jesse Whitewater; and Jisel Soleil Ayon as Standby for Mary and Martha." (https://www.broadwayworld.com/new-jersey/article/Review-GUN-POWDER-at-Paper-Mill-Playhouse-An-Exciting-Elaborate-New-Musical-20240417).

19.   Another positive review dated April 15, 2024 stated: "Based on family histories passed down to book-and-lyric writer Angelica Chéri (who works with composer Ross Baum), it gives [plaintiff] Ciara Renée and Liisi LaFontaine two of the richest vocal roles in memory, playing two sisters who pass as white in order to bail their mother out of trouble in 1893 Texas. . . [Plaintiff Ciara] Renée and LaFontaine have a fast and easy chemistry – it's a good thing because, once the plot kicks in, the production becomes a breakneck sequence of songs and old-school tableaux. . . And Baum's score paints a cohesive, near-comprehensive sonic picture of Black American music, with soul, blues, and R&B cohabiting with banjos, spirituals, and Big Easy trumpets.  [Plaintiff Ciara] Renée gets the bulk of the solos, and her voice smoothly fills out every genre, tempo, and mood

6

thrown at her. It's an unsurprisingly excellent performance that nevertheless feels like a revelation for the undervalued performer." (https://www.theatrely.com/post/gun-powder-shoots-straight-review).

20.  In July, 2024, a few months after completion of the run of the Play at the Paper Mill Playhouse, defendant SISTERS CLARKE requested that plaintiff sing and record a selection of songs from the Play at a recording studio with other performers from the Play's run at the Paper Mill Playhouse.  On July 12, 2024, plaintiff diligently and properly performed the recording of songs at a recording studio with the other performers.  Upon information and belief, the recording studio's costs were paid by defendant SISTERS CLARKE.  Plaintiff received a flat fee from SISTERS CLARKE for such work.

21.  On or about late July, 2024, defendant SISTERS CLARKE requested plaintiff to go to Martha's Vineyard Island in Massachusetts to meet and speak with potential investors of SISTERS CLARKE from August 8, 2024 to August 10, 2024. Plaintiff agreed to do so, traveled to and from Martha's Vineyard, and met with potential investors of SISTERS CLARKE from August 8, 2024 to August 10, 2024.  Representatives of SISTERS CLARKE introduced plaintiff to the potential investors as a member of the future Broadway cast of the Play.  Pursuant to an understanding between the plaintiff and SISTERS CLARKE,

plaintiff was not paid for her travel time to or from Martha's Vineyard or for her time spent speaking with potential investors in Martha's Vineyard and thus volunteered her time.  SISTERS CLARKE paid for plaintiff's travel costs to and from Martha's Vineyard, for the costs of all her meals there, and for her hotel costs there.

22. On or about September 1, 2024, defendant SISTERS CLARKE requested that plaintiff attend a press event in New York City for "Get Out the Vote" on September 9, 2024 to promote the Play as a cast member of the future Broadway version of the Play. Because plaintiff had a scheduling conflict, plaintiff could not attend the press event.  But for plaintiff's scheduling conflict, plaintiff would have attended the press event.

23.  Upon information and belief, on or about September 1, 2024, defendant MAKE WAY BROADWAY LIMITED LIABILITY COMPANY ("MAKE WAY BROADWAY"), was (1) assigned the rights, liabilities and obligations of defendant SISTERS CLARKE  set forth in the Agreement and became the successor-in-interest to SISTERS CLARKE with respect to the Play, (2) was assigned the rights, liabilities and obligations of defendant SISTERS CLARKE under the Agreement defined below whereby SISTERS CLARKE also retained those rights in a co-production, co-venture, partnership or co-ownership with MAKE WAY BROADAY, or (3) was granted separate rights, liabilities and obligations of

SISTERS CLARKE than those set forth in the Agreement whereby
MAKE WAY BROADWAY could only mount a staged reading of The Play
as limited licensee of the copyrighted theatrical work entitled
"Gun & Powder".

    24. In September, 2024, several months after completion of
the Play's run at the Paper Mill Playhouse, defendant MAKE WAY
BROADWAY entered into a written agreement with plaintiff for an
"October 2024 29-Hour Reading" whereby plaintiff was hired to
perform a staged reading of The Play in New York City in
October, 2024. At no time has plaintiff received an explanation
as to why defendant MAKE WAY BROADWAY was producing and
conducting the staged reading instead of SISTERS CLARKE.  The
staged reading was done without choreography or sets and
included only some of the other performers who had performed The
Play at the Paper Mill Playhouse. Several of the performers who
had performed the Play at the Paper Mill Playhouse were replaced
for the staged reading because, upon information and belief,
defendants MAKE WAY BROADWAY/SISTERS CLARKE were not satisfied
with their work in the Play to date including, without
limitation, plaintiff's character's love interest and
plaintiff's character's sister's love interest.  The staged
reading involved all the individual producers who were involved
in the Play at the Paper Mill Playhouse. Plaintiff fully and
properly performed all her duties pursuant to the agreement with
defendants MAKE WAY

BROADWAY/SISTERS CLARKE in connection with the staged reading of The Play that occurred on or about October 25, 2024.

25. On October 24, 2024, defendants MAKE WAY BROADWAY/SISTERS CLARKE requested that plaintiff attend an awards event on behalf of said defendants on November 18, 2024 in Harlem, New York, known as the "52nd Annual Vivian Robinson/AUDELCO Recognition Awards for Excellence in Black Theatre" for the PAPER MILL PLAYHOUSE production.  Plaintiff agreed to said defendants' request and attended the event on November 18, 2024 on behalf of said defendants together with the performer who played plaintiff's mother in the Play and the composer of the music of the Play.

26.  Given that defendants SISTERS CLARKE/MAKE WAY BROADWAY requested that plaintiff (1) sing and record songs from the Play in a recording studio in July, 2024, (2) go to Martha's Vineyard for 3 days in August, 2024 to meet potential investors where she was introduced as cast member of the future Broadway version of the Play, (3) attend a press event in September, 2024 to promote the Play as a cast member of the future Broadway version of the Play, (4) perform a staged reading of the Play in October, 2024, with only certain cast members that had performed satisfactorily during the run of the Play at the Paper Mill Playhouse, and (5) attend the 52nd Annual Vivian Robinson/AUDELCO Recognition Awards for Excellence in Black Theatre in November, 2024 on

behalf of said defendants, plaintiff could not have breached the
Agreement or be in default of any of her obligations under the
Agreement during its term.  Given that defendants SISTERS
CLARKE/MAKE WAY BROADWAY expended substantial funds and/or paid
plaintiff in connection with the studio recording, the trip to
Martha's Vineyard, and the staged reading of the Play, plaintiff
could not have breached the Agreement or be in default of any of
her obligations under the Agreement during its term.

27.  Then, on or about November 27, 2024, defendants Samuel
Lopez and Alecia Parker spoke with plaintiff over the telephone
and informed her that (1) defendants SISTERS CLARKE/MAKE WAY
BROADWAY intended on mounting a production of the Play in New
York City, (2) defendants SISTERS CLARKE/MAKE WAY BROADWAY
surprisingly would not be negotiating with plaintiff at all
regarding plaintiff's employment in the production of the Play
contemplated by defendants SISTERS CLARKE/MAKE WAY BROADWAY to
run in New York City and (3) plaintiff would not be hired to
perform in connection with such future production.  During that
telephone call, Ms. Parker and Mr. Lopez informed plaintiff that
they had advised defendants SISTERS CLARKE/MAKE WAY BROADWAY not
to negotiate with plaintiff regarding plaintiff's employment in
the production of the Play contemplated by defendants SISTERS
CLARKE/MAKE WAY BROADWAY to run in New York City and not to hire
plaintiff to perform in connection with such future production.

During that telephone call, Ms. Parker and Mr. Lopez informed plaintiff that defendants SISTERS CLARKE/MAKE WAY BROADWAY had followed their advice.

28.   During that telephone call, Ms. Parker and Mr. Lopez informed plaintiff that they had informed SISTERS CLARKE/MAKE WAY BROADWAY that plaintiff materially failed to collaborate in the Play performed at the Paper Mill Playhouse and that she was unwilling to accept feedback from the creative team.  Such information provided by Ms. Parker and Mr. Lopez to SISTERS CLARKE/MAKE WAY BROADWAY was false as plaintiff did not materially fail to collaborate and she was not unwilling to accept feedback from the creative team.

29.   On or about November 27, 2024, defendants SISTERS CLARKE/MAKE WAY BROADWAY, through defendants' agent (Michael Salerno), notified plaintiff, through plaintiff's agent (Gabrielle Kachman), by email that (1) defendants SISTERS CLARKE/MAKE WAY BROADWAY would not be negotiating with plaintiff at all regarding plaintiff's employment in the production contemplated by defendants to run in New York City and (2) plaintiff would not be hired to perform in connection with such future production.  Specifically, such email stated "I am writing to inform you that today the Producers of Gun & Powder spoke with Ciara Renee about how they are not moving forward with her for future productions."  SISTERS CLARKE/MAKE WAY

12

BROADWAY's refusal to negotiate with plaintiff in good faith
regarding her participation in the future production of the Play
in New York City constitutes a material breach of the Agreement.

30.  In response to plaintiff's request for an explanation
as to why no negotiation with defendants SISTERS CLARKE/MAKE WAY
BROADWAY could occur regarding plaintiff's future employment in
the Play, defendants SISTERS CLARKE/MAKE WAY BROADWAY responded,
by email on November 27, 2024 from said defendants' agent
(Michael Salerno), that "Reflecting on information learned
during post-mortems from various team members, including Ms.
Renee's lack of collaboration and unwillingness to accept
feedback from the creative team, the Producers have decided not
to offer a Broadway contract for Gun and Powder."

31.  Plaintiff denies that she materially failed to
collaborate and that she was unwilling to accept feedback from
the creative team.

32.  The alleged and false **"post-mortem"** analysis in the
email dated November 27, 2024 constitutes an admission by
defendants SISTERS CLARKE/MAKE WAY BROADWAY that they never
notified plaintiff that she breached or was in default of any of
her obligations under the Agreement during its term.

33.  Such alleged "post-mortem" analysis is also an
admission by defendants SISTERS CLARKE/MAKE WAY BROADWAY that
plaintiff was never given an opportunity to cure any alleged

breach by defendants that may have existed in order to constitute an "uncured breach" under the Agreement that would give defendants SISTERS CLARKE/MAKE WAY BROADWAY the right not to negotiate for plaintiff's employment in a New York City production of the Play.

34.  Such alleged "post-mortem" analysis regarding plaintiff's alleged "lack of collaboration and unwillingness to accept feedback from the creative team" is also so vague, ambiguous and lacking in detail that it does not describe any cognizable breach or default by plaintiff under the Agreement. It certainly does not describe any specific breach that was uncured after notice of the breach was provided to plaintiff.

35.  In May, 2025, defendants SISTERS CLARKE/MAKE WAY BROADWAY issued a press release informing the public that, among other things (1) the Play's title was changed from "Gun & Powder" to "Wanted", (2) The Play would begin a run on Broadway in 2026 and (3) a workshop for The Play would take place in June, 2025.

36.  Given plaintiff's experience and talent, defendants SISTERS CLARKE/MAKE WAY BROADWAY should have offered to pay plaintiff at least $13,500 per week plus reimbursements for job-related expenses and bonuses depending on box office receipts for 9 months for a Broadway production of Wanted (originally Gun

& Powder) totaling at least $486,000 as part of the good faith negotiations required by the Agreement.

37.   Plaintiff would have accepted such offer if it had been given by defendants SISTERS CLARKE/MAKE WAY BROADWAY.

FIRST CAUSE OF ACTION – Breach of Agreement by SISTERS CLARKE/MAKE WAY BROADWAY

38.   Plaintiff performed each of her material obligations under the Agreement.

39.   Defendants SISTERS CLARKE/MAKE WAY BROADWAY materially breached the Agreement by failing to negotiate in good faith with plaintiff regarding her employment in the version of the Play to be produced on Broadway.

40.    As a direct and proximate result of the breach by defendants SISTERS CLARKE/MAKE WAY BROADWAY, plaintiff has suffered and continues to suffer damages. Plaintiff is entitled to an award of damages that will fully compensate her for the harm caused by said defendants' breach as described above, including, without limitation, plaintiff's legal fees and costs expended in this lawsuit together with such other relief as the Court deems appropriate under the circumstances.

SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing by SISTERS CLARKE/MAKE WAY BROADWAY)

41.   Plaintiff repeats and realleges all the numbered paragraphs above as if each were fully set forth herein.

15

42.    There is implied in every contract a covenant of good faith and fair dealing, which provides that parties to an agreement must deal with each other honestly, fairly, and in good faith, and that neither party shall do anything that would have the effect of injuring the right of the other party to receive the benefits of the contract. Such a covenant was implied in the Agreement.

43.    Defendants by SISTERS CLARKE/MAKE WAY BROADWAY breached the covenant of good faith and fair dealing implied in the Agreement by failing to negotiate with plaintiff regarding her employment in the version of the Play to be produced on Broadway.

44.    Said defendants' actions as outlined above were unreasonable, improper, unconscionable and unjustifiable, and demonstrated a disregard for the rights and interests of plaintiff.  Said defendants' actions were contrary to plaintiff's reasonable expectations and have deprived plaintiff of her benefit of her bargain under the Agreement. Such conduct constitutes a breach of said defendants' duty of good faith and fair dealing.

45.    As a direct and proximate result of defendants SISTERS CLARKE/MAKE WAY BROADWAY's breach of the implied covenant of good faith and fair dealing, plaintiff has suffered and continues to suffer damages.

16

THIRD CAUSE OF ACTION
Tortious Interference With Contract

46.    Plaintiff repeats and realleges all the numbered paragraphs above as if each were fully set forth herein.

47.    Upon information and belief, in approximately January, 2023, defendants SISTERS CLARKE/MAKE WAY BROADWAY engaged defendant NAMCO to render general consulting services with respect to the production, management, expansion, touring and licensing of the Play.

48.    Upon information and belief, in approximately January, 2023, defendants SISTERS CLARKE/MAKE WAY BROADWAY engaged defendant SAMUEL LOPEZ and P3 Productions to provide producing services for The Play.

49.    The Agreement is a valid contract between plaintiff and defendants SISTERS CLARKE/MAKE WAY BROADWAY.

50.    During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted to plaintiff that they had knowledge of the Agreement.

51.    During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted that they had advised defendants SISTERS CLARKE/MAKE WAY BROADWAY not to negotiate with plaintiff regarding plaintiff's employment in the production of the Play contemplated by defendants SISTERS CLARKE/MAKE WAY BROADWAY to run in New York City and not to hire

plaintiff to perform in connection with such future production.

52.  During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted that defendants SISTERS CLARKE/MAKE WAY BROADWAY agreed to follow such advice and relayed to plaintiff that she would not be hired to perform by defendants SISTERS CLARKE/MAKE WAY BROADWAY in connection with such future production.

53.  Defendants NAMCO, Alecia Parker, P3 Productions and Samuel Lopez thus intentionally procured the breach of the Agreement by defendants SISTERS CLARKE/MAKE WAY BROADWAY.

54. As a result of such breach, plaintiff has suffered damages.

FOURTH CAUSE OF ACTION
Tortious Interference With Contract

55.   Plaintiff repeats and realleges all the numbered paragraphs above as if each were fully set forth herein.

56.   Plaintiff had an opportunity to enter into a business relationship with SISTERS CLARKE/MAKE WAY BROADWAY to perform the Play on Broadway.

57.   Defendants NAMCO, Alecia Parker, P3 Productions and Samuel Lopez knew about and intentionally interfered with that prospective business relationship by using wrongful means in that they falsely informed SISTERS CLARKE/MAKE WAY BROADWAY that plaintiff materially failed to collaborate in the Play performed

18

at the Paper Mill Playhouse and that she was unwilling to accept
feedback from the creative team.  Defendants NAMCO, Alecia
Parker, P3 Productions and Samuel Lopez also interfered with the
prospective business relationship for the sole purpose of
harming plaintiff as they did not have a legitimate economic
self-interest for doing so.

58. But for the interference by defendants NAMCO, P3
Productions, Alecia Parker and Samuel Lopez, plaintiff would
have been hired in the Play on Broadway.

59. As a result of the loss of the prospective
business relationship, plaintiff sustained damages.

<u>DEMAND FOR JURY TRIAL</u>

60.  Plaintiff demands a trial by jury on all issues so
triable.

WHEREFORE, judgment is demanded as follows:

A. in favor of Plaintiff, against Defendants SISTERS
CLARKE/MAKE WAY BROADWAY, jointly and severally, on the 1st
Cause of Action and/or 2nd Cause of Action in an amount of
compensatory damages to be determined by the Court but that is
at least $486,000, plus pre- and post-judgment interest,
consequential damages, attorneys' fees, costs and other relief
as this Court may deem appropriate.

B.  in favor of Plaintiff, against Defendants NAMCO, Alecia
Parker, P3 Productions, and Samuel Lopez, jointly and severally,

on the 3rd Cause of Action and/or 4th Cause of Action in an amount of compensatory damages to be determined by the Court but that is at least $486,000, plus punitive damages, pre- and post-judgment interest, consequential damages, attorneys' fees, costs and other relief as this Court may deem appropriate.

Dated:   August 13, 2025
New York, New York

By:____/s/ *Gabriel Fischbarg*
Gabriel Fischbarg, Esq. (GF5456)
230 Park Avenue, Suite 330W
New York, New York 10169
(917) 514-6261
Attorney for plaintiff

20