UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X    Case No. 25-cv-06714-AT
CIARA RENEE,

       Plaintiff,

v.                                 <u>FIRST AMENDED COMPLAINT</u>

SISTERS CLARKE LIMITED LIABILITY
COMPANY, MAKE WAY BROADWAY
LIMITED LIABILITY COMPANY,
NATIONAL ARTISTS MANAGEMENT
COMPANY, INC., ALECIA PARKER,
P3 PRODUCTIONS a/k/a P THREE
PRODUCTIONS and SAMUEL LOPEZ,

       Defendants.

------------------------------X

    Plaintiff, CIARA RENEE (hereinafter "Plaintiff'), by and through her attorney, files this First Amended Complaint against defendants and states as follows:

    <u>PARTIES</u>

    1.   Plaintiff is an individual domociled in California.

    2.   Upon information and belief, at all times material hereto, SISTERS CLARKE LIMITED LIABILITY COMPANY ("SISTERS CLARKE") is a New York limited liability company authorized to do business in the State of New York and maintains its principal place of business in New York, New York.

    3.   Upon information and belief, at all times material hereto, MAKE WAY BROADWAY LIMITED LIABILITY COMPANY ("Make Way Broadway") is a New York limited liability company authorized to

do business in the State of New York and maintains its principal place of business in New York, New York.

4.    Upon information and belief, at all times material hereto, NATIONAL ARTISTS MANAGEMENT COMPANY, INC. ("NAMCO") is a New Jersey corporation authorized to do business in the State of New York and maintains its principal place of business in New York, New York.

5.    Upon information and belief, at all times material hereto, defendant P3 Productions a/k/a P Three Productions ("P3 Productions") is a general partnership that was formed in New York State and maintains its principal place of business in New York, New York.

6.    Upon information and belief, ALECIA PARKER and SAMUEL LOPEZ are individuals domiciled in New York State.

7.    Upon information and belief, defendant ALECIA PARKER was and is was the agent, employee, partner, joint-venturer, co-conspirator, owner, principal, shareholder, member, officer, director and/or employer of defendant NAMCO, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other.

8.   Upon information and belief, defendant SAMUEL LOPEZ was and is was the agent, employee, partner, joint-venturer, co-conspirator, owner, principal, shareholder, member, officer, director and/or employer of defendant P3 Productions, and each of them and are and at all times herein mentioned were, acting within the course and scope of that agency, employment, partnership, conspiracy, ownership, membership or joint venture, and that the acts and conduct herein alleged of each such defendant were known to, authorized by and/or ratified by the other.

JURIDICTION AND VENUE

9.   Personal jurisdiction over the Defendants is based upon 28 U.S.C. § 1332(a)(1) because plaintiff is domiciled in and is a citizen of California, and the Defendants are all citizens of the State of New York or New Jersey, and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of costs and interests.  As mentioned above, defendant NAMCO is a citizen of New York State (principal place of business) and the State of New Jersey (State of formation).  All the other defendant entities (defendants SISTERS CLARKE, MAKE WAY BROADWAY and P3 Productions) are citizens of New York State (principal place of business and State of formation).  All the individual defendants (ALECIA PARKER and SAMUEL LOPEZ) are domiciled in and citizens of New York State. Upon information and belief, the

following persons are the members of defendant SISTERS CLARKE and are all domiciled and citizens of New York State: Robyn Coles, Evan Coles, Barry Weissler and Fran Weissler.  Upon information and belief, the following persons are the members of defendant Make Way Broadway and are all domiciled and citizens of New York State: Robyn Coles, Evan Coles, Barry Weissler and Fran Weissler.  Upon information and belief, the following persons are the general partners of P3 Productions and are all domiciled and citizens of New York State: Benjamin Holtzman, Fiona Rudin, and Samuel Lopez.

10.   Venue is proper in the Southern District of New York pursuant to 28 US.C. §1391(b)(2) being that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

<u>SUBSTANTIVE ALLEGATIONS</u>

11.   Upon information and belief, at all relevant times, defendant SISTERS CLARKE LIMITED LIABILTY COMPANY was and is a licensee of the copyrighted theatrical work entitled "Gun & Powder" with Copyright Registration No. Pau003922750 and is permitted to produce the copyrighted work as a live musical production.

12.   On or about November 21, 2023, SISTERS CLARKE and plaintiff entered into a written letter agreement  (the "Agreement") whereby plaintiff agreed to provide her acting and

singing services in the role of "Mary Clarke", a leading character in the copyrighted work that is a full length musical entitled "Gun & Powder" (the "Play") to be performed at the Paper Mill Playhouse in Millburn, New Jersey for a limited run in April, 2024 and May, 2024 in return for (i) certain monetary compensation and (ii) the right to continue such services in a production of the Play mounted by SISTERS CLARKE in New York City or London upon completion of good faith negotiations to determine plaintiff's monetary compensation for such services.

13.   The obligation of SISTERS CLARKE to negotiate in good faith with plaintiff regarding her employment in a production of the Play in New York City or London constitutes valid and material consideration in the Agreement. But for the obligation by SISTERS CLARKE to conduct such negotiation in the Agreement, plaintiff would not have entered into the Agreement.

14.   From approximately February, 2024 to May, 2024, plaintiff properly performed all the services required of her pursuant to the Agreement during the entire term of the Agreement including the full run of the Play at the Paper Mill Playhouse.  Plaintiff fulfilled all her obligations under the Agreement without any uncured breach or default thereof.  At no time from the commencement of the Agreement until the completion of plaintiff's obligations under the Agreement did SISTERS

CLARKE ever notify plaintiff that she was in breach of or was in default of any of her obligations under the Agreement.

15.  In a positive review by The New York Times dated April 18, 2024 of the Play performed at the Paper Mill Playhouse and designated as a "Critic's Pick" by the newspaper, plaintiff was singled out for her contribution to the show:  "The ensuing conflicts, both within and between them, are rendered in belt-heavy R&B numbers that LaFontaine, and especially [plaintiff Ciara] Renée, send soaring."

16.  The New York Times's "Critic's Pick" designation and logo applicable to its review is displayed prominently on the defendant's website relating to the Play (www.wantedmusical.com).

17.  A review co-written by two critics in the The Jewish Voice and Opinion dated April 17, 2024 stated: "We were absolutely captivated by [plaintiff] Ciara Renée and Liisi LaFontaine's flawless performances, with their delightful voices and great stage presence. They were spectacular, supported by a wonderful, accomplished cast, each a star in their own right."

18.  Another positive review of the Play dated April 17, 2024 stated: "The cast of Gun & Powder is a perfect collective. The company features prominent stars of stage and screen that include Liisi LaFontaine as Martha Clarke; [plaintiff] Ciara Renée as Mary Clarke; Jeannette Bayardelle as Tallulah Clarke;

Aaron James McKenzie as Elijah; Hunter Parrish as Jesse
Whitewater; and Jisel Soleil Ayon as Standby for Mary and
Martha." (https://www.broadwayworld.com/new-
jersey/article/Review-GUN-POWDER-at-Paper-Mill-Playhouse-An-
Exciting-Elaborate-New-Musical-20240417).

19.  Another positive review dated April 15, 2024 stated:
"Based on family histories passed down to book-and-lyric writer
Angelica Chéri (who works with composer Ross Baum), it gives
[plaintiff] Ciara Renée and Liisi LaFontaine two of the richest
vocal roles in memory, playing two sisters who pass as white in
order to bail their mother out of trouble in 1893 Texas. . .
[Plaintiff Ciara] Renée and LaFontaine have a fast and easy
chemistry – it's a good thing because, once the plot kicks in,
the production becomes a breakneck sequence of songs and old-
school tableaux. . . And Baum's score paints a cohesive, near-
comprehensive sonic picture of Black American music, with soul,
blues, and R&B cohabiting with banjos, spirituals, and Big Easy
trumpets.  [Plaintiff Ciara] Renée gets the bulk of the solos,
and her voice smoothly fills out every genre, tempo, and mood
thrown at her. It's an unsurprisingly excellent performance that
nevertheless feels like a revelation for the undervalued
performer." (https://www.theatrely.com/post/gun-powder-shoots-
straight-review).

20.  In July, 2024, a few months after completion of the run of the Play at the Paper Mill Playhouse, defendant SISTERS CLARKE requested that plaintiff sing and record a selection of songs from the Play at a recording studio with other performers from the Play's run at the Paper Mill Playhouse.  On July 12, 2024, plaintiff diligently and properly performed the recording of songs at a recording studio with the other performers.  Upon information and belief, the recording studio's costs were paid by defendant SISTERS CLARKE.  Plaintiff received a flat fee from SISTERS CLARKE for such work.

21.  On or about late July, 2024, defendant SISTERS CLARKE requested plaintiff to go to Martha's Vineyard Island in Massachusetts to meet and speak with potential investors of SISTERS CLARKE from August 8, 2024 to August 10, 2024. Plaintiff agreed to do so, traveled to and from Martha's Vineyard, and met with potential investors of SISTERS CLARKE from August 8, 2024 to August 10, 2024.  Representatives of SISTERS CLARKE introduced plaintiff to the potential investors as a member of the future Broadway cast of the Play.  Pursuant to an understanding between the plaintiff and SISTERS CLARKE, plaintiff was not paid for her travel time to or from Martha's Vineyard or for her time spent speaking with potential investors in Martha's Vineyard and thus volunteered her time.  SISTERS CLARKE paid for plaintiff's travel costs to and from Martha's

Vineyard, for the costs of all her meals there, and for her hotel costs there.

22. On or about September 1, 2024, defendant SISTERS CLARKE requested that plaintiff attend a press event in New York City for "Get Out the Vote" on September 9, 2024 to promote the Play as a cast member of the future Broadway version of the Play. Because plaintiff had a scheduling conflict, plaintiff could not attend the press event.  But for plaintiff's scheduling conflict, plaintiff would have attended the press event.

23.  Upon information and belief, on or about September 1, 2024, defendant MAKE WAY BROADWAY LIMITED LIABILTY COMPANY, was (1) assigned the rights, liabilities and obligations of defendant SISTERS CLARKE LIMITED LIABILTY COMPANY ("SISTERS CLARKE") set forth in the Agreement and became the successor-in-interest to SISTERS CLARKE with respect to the Play, (2) was assigned the rights, liabilities and obligations of defendant SISTERS CLARKE under the Agreement defined below whereby SISTERS CLARKE also retained those rights in a co-production, co-venture, partnership or co-ownership with MAKE WAY BROADAY, or (3) was granted separate rights, liabilities and obligations of SISTERS CLARKE than those set forth in the Agreement whereby MAKE WAY BROADWAY could only mount a staged reading of The Play as limited licensee of the copyrighted theatrical work entitled "Gun & Powder".

24. In September, 2024, several months after completion of the Play's run at the Paper Mill Playhouse, defendant MAKE WAY BROADWAY entered into a written agreement with plaintiff for an "October 2024 29-Hour Reading" whereby plaintiff was hired to perform a staged reading of The Play in New York City in October, 2024. At no time has plaintiff received an explanation as to why defendant MAKE WAY BROADWAY was producing and conducting the staged reading instead of SISTERS CLARKE.  The staged reading was done without choreography or sets and included only some of the other performers who had performed The Play at the Paper Mill Playhouse. Several of the performers who had performed the Play at the Paper Mill Playhouse were replaced for the staged reading because, upon information and belief, defendants MAKE WAY BROADWAY/SISTERS CLARKE was not satisfied with their work in the Play to date including, without limitation, plaintiff's character's love interest and plaintiff's character's sister's love interest.  The staged reading involved all the individual producers who were involved in the Play at the Paper Mill Playhouse. Plaintiff fully and properly performed all her duties pursuant to the agreement with defendants MAKE WAY BROADWAY/SISTERS CLARKE in connection with the staged reading of The Play that occurred on or about October 25, 2024.

25. On October 24, 2024, defendants MAKE WAY
BROADWAY/SISTERS CLARKE requested that plaintiff attend an
awards event on behalf of said defendants on November 18, 2024 in
Harlem, New York, known as the "52nd Annual Vivian
Robinson/AUDELCO Recognition Awards for Excellence in Black
Theatre" for the PAPER MILL PLAYHOUSE production.  Plaintiff
agreed to said defendants' request and attended the event on
November 18, 2024 on behalf of said defendants together with the
performer who played plaintiff's mother in the Play and the
composer of the music of the Play.

26.  Given that defendants SISTERS CLARKE/MAKE WAY BROADWAY
requested that plaintiff (1) sing and record songs from the Play
in a recording studio in July, 2024, (2) go to Martha's Vineyard
for 3 days in August, 2024 to meet potential investors where she
was introduced as cast member of the future Broadway version of
the Play, (3) attend a press event in September, 2024 to promote
the Play as a cast member of the future Broadway version of the
Play, (4) perform a staged reading of the Play in October, 2024,
with only certain cast members that had performed satisfactorily
during the run of the Play at the Paper Mill Playhouse, and (5)
attend the 52nd Annual Vivian Robinson/AUDELCO Recognition
Awards for Excellence in Black Theatre in November, 2024 on
behalf of said defendants, plaintiff could not have breached the
Agreement or be in default of any of her obligations under the

11

Agreement during its term.  Given that defendants SISTERS
CLARKE/MAKE WAY BROADWAY expended substantial funds and/or paid
plaintiff in connection with the studio recording, the trip to
Martha's Vineyard, and the staged reading of the Play, plaintiff
could not have breached the Agreement or be in default of any of
her obligations under the Agreement during its term.

27.  Then, on or about November 27, 2024, defendants Samuel
Lopez and Alecia Parker spoke with plaintiff over the telephone
and informed her that (1) defendants SISTERS CLARKE/MAKE WAY
BROADWAY intended on mounting a production of the Play in New
York City, (2) defendants SISTERS CLARKE/MAKE WAY BROADWAY
surprisingly would not be negotiating with plaintiff at all
regarding plaintiff's employment in the production of the Play
contemplated by defendants SISTERS CLARKE/MAKE WAY BROADWAY to
run in New York City and (3) plaintiff would not be hired to
perform in connection with such future production.  During that
telephone call, Ms. Parker and Mr. Lopez informed plaintiff that
they had advised defendants SISTERS CLARKE/MAKE WAY BROADWAY not
to negotiate with plaintiff regarding plaintiff's employment in
the production of the Play contemplated by defendants SISTERS
CLARKE/MAKE WAY BROADWAY to run in New York City and not to hire
plaintiff to perform in connection with such future production.
During that telephone call, Ms. Parker and Mr. Lopez informed

plaintiff that defendants SISTERS CLARKE/MAKE WAY BROADWAY had followed their advice.

28.   During that telephone call, Ms. Parker and Mr. Lopez informed plaintiff that they had informed SISTERS CLARKE/MAKE WAY BROADWAY that plaintiff materially failed to collaborate in the Play performed at the Paper Mill Playhouse and that she was unwilling to accept feedback from the creative team.  Such information provided by Ms. Parker and Mr. Lopez to SISTERS CLARKE/MAKE WAY BROADWAY was false as plaintiff did not materially fail to collaborate and she was not unwilling to accept feedback from the creative team.

29.   On or about November 27, 2024, defendants SISTERS CLARKE/MAKE WAY BROADWAY, through defendants' agent (Michael Salerno), notified plaintiff, through plaintiff's agent (Gabrielle Kachman), by email that (1) defendants SISTERS CLARKE/MAKE WAY BROADWAY would not be negotiating with plaintiff at all regarding plaintiff's employment in the production contemplated by defendants to run in New York City and (2) plaintiff would not be hired to perform in connection with such future production.  Specifically, such email stated "I am writing to inform you that today the Producers of Gun & Powder spoke with Ciara Renee about how they are not moving forward with her for future productions."  SISTERS CLARKE/MAKE WAY BROADWAY's refusal to negotiate with plaintiff in good faith

regarding her participation in the future production of the Play in New York City constitutes a material breach of the Agreement.

30.  In response to plaintiff's request for an explanation as to why no negotiation with defendants SISTERS CLARKE/MAKE WAY BROADWAY could occur regarding plaintiff's future employment in the Play, defendants SISTERS CLARKE/MAKE WAY BROADWAY responded, by email on November 27, 2024 from said defendants' agent (Michael Salerno), that "Reflecting on information learned during post-mortems from various team members, including Ms. Renee's lack of collaboration and unwillingness to accept feedback from the creative team, the Producers have decided not to offer a Broadway contract for Gun and Powder."

31.  Plaintiff denies that she materially failed to collaborate and that she was unwilling to accept feedback from the creative team.

32.  The alleged and false **"post-mortem"** analysis in the email dated November 27, 2024 constitutes an admission by defendants SISTERS CLARKE/MAKE WAY BROADWAY that they never notified plaintiff that she breached or was in default of any of her obligations under the Agreement during its term.

33.  Such alleged "post-mortem" analysis is also an admission by defendants SISTERS CLARKE/MAKE WAY BROADWAY that plaintiff was never given an opportunity to cure any alleged breach by defendants that may have existed in order to

constitute an "uncured breach" under the Agreement that would give defendants SISTERS CLARKE/MAKE WAY BROADWAY the right not to negotiate for plaintiff's employment in a New York City production of the Play.

34.  Such alleged "post-mortem" analysis regarding plaintiff's alleged "lack of collaboration and unwillingness to accept feedback from the creative team" is also so vague, ambiguous and lacking in detail that it does not describe any cognizable breach or default by plaintiff under the Agreement. It certainly does not describe any specific breach that was uncured after notice of the breach was provided to plaintiff.

35.  In May, 2025, defendants SISTERS CLARKE/MAKE WAY BROADWAY issued a press release informing the public that, among other things (1) the Play's title was changed from "Gun & Powder" to "Wanted", (2) The Play would begin a run on Broadway in 2026 and (3) a workshop for The Play would take place in June, 2025.

36.  Given plaintiff's experience and talent, defendants SISTERS CLARKE/MAKE WAY BROADWAY should have offered to pay plaintiff at least $13,500 per week plus reimbursements for job-related expenses and bonuses depending on box office receipts for 9 months for a Broadway production of Wanted (originally Gun & Powder) totaling at least $486,000 as part of the good faith negotiations required by the Agreement.

37.  Plaintiff would have accepted such offer if it had
been given by defendants SISTERS CLARKE/MAKE WAY BROADWAY.

FIRST CAUSE OF ACTION – Breach of Agreement by SISTERS
CLARKE/MAKE WAY BROADWAY

38.  Plaintiff performed each of her material obligations
under the Agreement.

39.  Defendants SISTERS CLARKE/MAKE WAY BROADWAY
materially breached the Agreement by failing to negotiate in
good faith with plaintiff regarding her employment in the
version of the Play to be produced on Broadway.

40.  As a direct and proximate result of the breach by
defendants SISTERS CLARKE/MAKE WAY BROADWAY, plaintiff has
suffered and continues to suffer damages. Plaintiff is entitled
to an award of damages that will fully compensate it for the
harm caused by said defendants' breach as described above,
including, without limitation, plaintiff's legal fees and costs
expended in this lawsuit together with such other relief as the
Court deems appropriate under the circumstances.

SECOND CAUSE OF ACTION
(Breach of the Implied Covenant of Good Faith and Fair Dealing
by SISTERS CLARKE/MAKE WAY BROADWAY)

41.  Plaintiff repeats and realleges all the numbered
paragraphs above as if each were fully set forth herein.

42.  There is implied in every contract a covenant of
good faith and fair dealing, which provides that parties to an

16

agreement must deal with each other honestly, fairly, and in good faith, and that neither party shall do anything that would have the effect of injuring the right of the other party to receive the benefits of the contract. Such a covenant was implied in the Agreement.

43.   Defendants by SISTERS CLARKE/MAKE WAY BROADWAY breached the covenant of good faith and fair dealing implied in the Agreement by failing to negotiate with plaintiff regarding her employment in the version of the Play to be produced on Broadway.

44.   Said defendants' actions as outlined above were unreasonable, improper, unconscionable and unjustifiable, and demonstrated a disregard for the rights and interests of plaintiff.  Said defendants' actions were contrary to plaintiff's reasonable expectations and have deprived plaintiff of her benefit of her bargain under the Agreement. Such conduct constitutes a breach of said defendants' duty of good faith and fair dealing.

45.   As a direct and proximate result of defendants SISTERS CLARKE/MAKE WAY BROADWAY's breach of the implied covenant of good faith and fair dealing, plaintiff has suffered and continues to suffer damages.

THIRD CAUSE OF ACTION
Tortious Interference With Contract

46.    Plaintiff repeats and realleges all the numbered paragraphs above as if each were fully set forth herein.

47.    Upon information and belief, in approximately January, 2023, defendants SISTERS CLARKE/MAKE WAY BROADWAY engaged defendant NAMCO to render general consulting services with respect to the production, management, expansion, touring and licensing of the Play.

48.    Upon information and belief, in approximately January, 2023, defendants SISTERS CLARKE/MAKE WAY BROADWAY engaged defendant SAMUEL LOPEZ and P3 Productions to provide producing services for The Play.

49.     The Agreement is a valid contract between plaintiff and defendants SISTERS CLARKE/MAKE WAY BROADWAY.

50.  During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted to plaintiff that they had knowledge of the Agreement.

51.    During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted that they had advised defendants SISTERS CLARKE/MAKE WAY BROADWAY not to negotiate with plaintiff regarding plaintiff's employment in the production of the Play contemplated by defendants SISTERS CLARKE/MAKE WAY BROADWAY to run in New York City and not to hire

plaintiff to perform in connection with such future production.

52.   During the telephone call on November 27, 2024 described above, Ms. Parker and Mr. Lopez admitted that defendants SISTERS CLARKE/MAKE WAY BROADWAY agreed to follow such advice and relayed to plaintiff that she would not be hired to perform by defendants SISTERS CLARKE/MAKE WAY BROADWAY in connection with such future production.

53.   Defendants NAMCO, Alecia Parker, P3 Productions and Samuel Lopez thus intentionally procured the breach of the Agreement by defendants SISTERS CLARKE/MAKE WAY BROADWAY.

54. As a result of such breach, plaintiff has suffered damages.

FOURTH CAUSE OF ACTION
Tortious Interference With Contract

55.    Plaintiff repeats and realleges all the numbered paragraphs above as if each were fully set forth herein.

56.    Plaintiff had an opportunity to enter into a business relationship with SISTERS CLARKE/MAKE WAY BROADWAY to perform the Play on Broadway.

57.    Defendants NAMCO, Alecia Parker, P3 Productions and Samuel Lopez knew about and intentionally interfered with that prospective business relationship by using wrongful means in that they falsely informed SISTERS CLARKE/MAKE WAY BROADWAY that plaintiff materially failed to collaborate in the Play performed

at the Paper Mill Playhouse and that she was unwilling to accept feedback from the creative team.  Defendants NAMCO, Alecia Parker, P3 Productions and Samuel Lopez also interfered with the prospective business relationship for the sole purpose of harming plaintiff as they did not have a legitimate economic self-interest for doing so.

58. But for the interference by defendants NAMCO, P3 Productions, Alecia Parker and Samuel Lopez, plaintiff would have been hired in the Play on Broadway.

59. As a result of the loss of the prospective business relationship, plaintiff sustained damages.

<u>DEMAND FOR JURY TRIAL</u>

60.  Plaintiff demands a trial by jury on all issues so triable.

WHEREFORE, judgment is demanded as follows:

A. in favor of Plaintiff, against Defendants SISTERS CLARKE/MAKE WAY BROADWAY, jointly and severally, on the 1st Cause of Action and/or 2nd Cause of Action in an amount of compensatory damages to be determined by the Court but that is at least $486,000, plus pre- and post-judgment interest, consequential damages, attorneys' fees, costs and other relief as this Court may deem appropriate.

B.  in favor of Plaintiff, against Defendants NAMCO, Alecia Parker, P3 Productions, and Samuel Lopez, jointly and severally,

on the 3rd Cause of Action and/or 4th Cause of Action in an amount of compensatory damages to be determined by the Court but that is at least $486,000, plus punitive damages, pre- and post-judgment interest, consequential damages, attorneys' fees, costs and other relief as this Court may deem appropriate.

Dated:   August 20, 2025          By: ____ /s/ *Gabriel Fischbarg*
New York, New York               Gabriel Fischbarg, Esq.
                                 230 Park Avenue, Suite 330W
                                 New York, New York 10169
                                 (917) 514-6261
                                 Attorney for plaintiff